# DOC #_____

## 16 MISC    464

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------x

In re SEARCH WARRANT ISSUED ON OCTOBER 30,
2016 FOR ACCESS TO EMAIL MESSAGES INVOLVING
HILLARY R. CLINTON LOCATED ON THE COMPUTER
OF ANTHONY WEINER AND HUMA ABEDIN;

**Memorandum of Law**

**Index No.**

E. Randol Schoenberg,

                            Petitioner,

    -v-

                            Respondent.

--------------------------------------------------------------------x

*(stamp: U.S. DISTRICT COURT FILED DEC 13 2016 S.D. OF N.Y.)*

## Preliminary Statement

Mr. Schoenberg comes before the Court seeking the release of the search warrant, search warrant application, and any receipts used by the FBI and Justice Department to obtain the review of Huma Abedin's e-mails related to Hillary Clinton, as discussed in this New York Times story from October 30, 2016.[1]

A request to the Southern District of New York's Clerk's office was attempted and no information or documents were forthcoming. A separate Freedom of Information Act request has been made, but will not be decided in an adequate timeframe considering the impending vote of the Electoral College on December 19, 2016.

## Background Information

On October 28, 2016, FBI Director James Comey sent a letter to Congress explaining that, based on emails between Huma Abedin and Hillary Clinton found on Anthony Weiner's computer in an unrelated investigation, he would re-open the investigation into whether there

---

[1] Matt Apuzzo, Michael S. Schmidt and Adam Goldman, *Justice Department Obtains Warrant to Review Clinton Aide's Emails* , N.Y. Times, Oct. 30, 2016, Decl. Exhibit 8

was evidence of illegal activity committed by Hillary Clinton that would warrant a prosecution.[2] On October 30, 2016, two days after the letter, the New York Times reported that the DOJ had obtained a search warrant to review the emails in question.[3]

The American public has a strong interest in the disclosure of the search warrant and related application, affidavits, and receipts. The FBI is the nation's premier law enforcement agency. Access to the records that underlie criminal investigations is crucial to ensuring that the FBI is accountable for following the legal standards it is required to uphold.  Transparency and accountability are most important in cases such as this one, where the investigation in question is heavily politicized, continues to dominate national media and the national sphere of conversation, and may have influenced the outcome of the election. Access to the search warrant and related materials that provided the basis for the investigation are of the utmost public importance.

In March 2015, the New York Times broke a story that Hillary Clinton used a private email server to conduct official State Department business.[4]  The use of the private email server led to an FBI investigation into whether there was evidence of classified information being improperly stored or transmitted in violation of federal statutes.[5] The FBI investigation revealed that out of 30,000 emails examined, there were 110 emails containing classified information.[6] On July 5, 2016, the FBI concluded there was no evidence Secretary Clinton intended to violate laws and merely acted carelessly; thus the circumstances did not warrant any further FBI action. The

---

[2] Letter of James B. Comey, Dated Oct. 28, 2016, Decl. Exhibit 7.

[3] Matt Apuzzo, Michael S. Schmidt and Adam Goldman, *Justice Department Obtains Warrant to Review Clinton Aide's Emails*, N.Y. Times, Oct. 30, 2016, Decl. Exhibit 8.

[4] Michael S. Schmidt, *Hillary Clinton Used Personal Email Account at State Dept., Possibly Breaking Rules, N.Y. Times*, Mar. 5, 2015, Decl. Exhibit 1.

[5] *Statement by FBI Director James B. Comey on the Investigation of Secretary Hillary Clinton's Use of a Personal E-Mail System,* Decl. Exhibit 2.

[6] *Id.*

FBI closed the investigation.[7] On October 28, 2016, Comey wrote a public letter to Congress indicating that the FBI intended to re-open the July 2015 investigation, despite having no way of knowing whether the material found on Weiner's computer was significant or whether any of the emails in question contained classified information.[8] Two days after Comey's letter to Congress, the Justice Department obtained a warrant to search the Abedin emails on Weiner's computer.[9] Weiner's computer was initially processed in New York.[10] To Petitioner's knowledge, there has been no further reporting on the investigation that has revealed either the basis on which the search warrant was issued or who issued the warrant. On November 6, 2016, nine days after Comey's letter to Congress and two days before the presidential election, the FBI announced that it would stand by its original finding that Clinton's actions did not warrant prosecution.[11] Comey's public notification to Congress of the decision to re-open the investigation was contrary to ordinary protocol, as details of FBI investigations are typically kept secret.

Access to the search warrant is critical for the public to learn the basis for the re-opening of the investigation.

## **Venue**

As discussed above, the laptop computer belonging to Anthony Weiner and Huma Abedin was seized in New York and an investigation was opened by the US Attorney for the SDNY.

---

[7] *Id.*
[8] *Letter of James B. Comey, Dated Oct. 28, 2016,* Decl. Exhibit 7.
[9] Matt Apuzzo, Michael S. Schmidt and Adam Goldman, *Justice Department Obtains Warrant to Review Clinton Aide's Emails,* N.Y. Times, Oct. 30, 2016, Decl Exhibit 8.

[10] *Id.*

[11] Letter of James B. Comey, Dated Nov. 6, 2016, Decl. Exhibit 9.

## Argument

The American public has a long enjoyed a common law right of access to judicial documents. "[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597 (1978). This right is a core component of a society whose "citizen's desire to keep a watchful eye on the workings of public agencies." *Id.* at 598. The Second Circuit Court of Appeals has clearly articulated this right as a presumption of access to judicial documents:

> The presumption of access is based on the need for federal courts, although independent - indeed, particularly because they are independent - to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*Lugosch v. Pyramid Company of Onondaga,* 435 F.3d 110, 119 (2d Cir. 2006)(Quoting *United States v. Amodeo* ("Amodeo II"), 71 F.3d 1044, 1048 (2d Cir. 1995)).

The process for determining whether the common law right of access applies is well defined. The right attaches only to "judicial documents," which are broadly defined as those materials submitted to courts that are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch,* 435 F.3d at 119. A "[f]inding that a document is a 'judicial document' triggers a presumption of public access, and requires a court to make specific, rigorous findings before sealing the document or otherwise denying public access."

4

*Newsday LLC v. Cty. of Nassau*, 730 F.3d 156, 166–67 (2d Cir.2013)). The presumption will be at its strongest when the documents are used in conjunction with "matters that directly affect an adjudication" and at its weakest in respect to "matters that come within a court's purview solely to insure their irrelevance." *Id.* at 1049-50. Where the documents at issue are central to an adjudication, the presumption can be overcome only by a showing of "exceptional circumstances." *Lugosch*, 435 F.3d at 120-21 ("an adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny"). Where the presumption of access is "of the highest" weight, as to material sought by the public or press, the material "should not remain under seal *absent the most compelling reasons.* "[12] *Id.* at 123 (emphasis in original) (citation omitted).

It is understood that a search warrant application is a "public document subject to a common law right of access." *Application of Newsday, Inc.*, 895 F.2d 74, 79 (2d Cir. 1990). This Court has noted that such documents "plainly" qualify as "judicial documents" because "courts must necessarily review them in order to perform" their task of deciding such applications. (*In re Application of the N.Y. Times Co.,*600 F.Supp.2d 504, 507 (S.D.N.Y. 2009). Recognizing the public right to access search warrant applications, this Court has granted a motion to unseal such materials related to an investigation of an internet gambling website noting that, "the affidavits

---

[12] To the extent that compelling reasons exist to deny public access to the subject affidavits, the limitation should not be broader than necessary. *See, e.g., In re Newsday*, 895 F.2d at 80 (warning against "drastic restrictions on the common law right of access" and approvingly noting the district court's limited redactions); *In re San Francisco Chronicle*, No. M07-256 (TCP), 2007 U.S. Dist. LEXIS 68322, at *2 (E.D.N.Y. Sept. 24, 2007) (limiting redactions to identifying information of witnesses where the role of that information in the exercise of judicial power and its value in monitoring courts were "minimal"); *In re Searches of Semtex Indus. Corp. 64*, 876 F. Supp. 426, 429 (E.D.N.Y. 1995) (directing the eventual unsealing of warrant application with redactions of only "information regarding undercover agents or cooperators").

announced publicly that the emails have been reviewed and that the FBI has not changed its view that charges against Ms. Clinton would not be appropriate.[16] We can therefore assume that there is no ongoing investigation into Ms. Clinton. This leaves the court with a high degree of public interest both in core issues of the case itself and in the public's "confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Lugosch*, 435 F.3d at 119.

### Petitioner has a First Amendment right to access documents

Because the search warrant material here should be public under the common law, the Court does not need to reach the constitutional question. But if it does, the Court should hold that the First Amendment gives the public access to search warrants and supporting documents where there is no ongoing case and where no privacy issues are implicated.

The Second Circuit has adopted "two approaches to determine whether the First Amendment right of access extends to particular judicial records. First, the public has a right to gain access to judicial records (1) that have historically been open to the press and general public, and (2) where "public access plays a significant positive role in the functioning of the particular process in question," and; second where " judicial records are derived from or a necessary corollary of the capacity to attend the relevant proceeding." (*In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 409 (2d Cir. 2009)(internal citations omitted). This second approach is not dispositive here because search warrant application proceedings are generally not public. However, the first prong applies to the instant case.

The records at issue here are of a nature that indicate the value of public access is at its most positive, as they go to the core functioning of the courts and law enforcement as independent, non-partisan actors in our democratically controlled government. The DC District

---

[16] Letter of James B. Comey, Dated Nov. 6, 2016, Decl. Exhibit 9.

Court, when facing a similar set of circumstances (i.e. a closed case of significant public interest) found a First Amendment right to access noting that:

> [P]ost-investigation warrant materials ... have historically been available to the public, and therefore meet the first prong of the Supreme Court's First Amendment qualified right of access test. First, routine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials; warrant applications and receipts are routinely filed with the clerk of court without seal. Fed. R. Crim. P. 41(i) (warrant materials should be delivered to the clerk in the district where the property was seized); *Gunn*, 855 F.2d at 573. *See also Times Mirror Co.*, 873 F.2d at 1214 ("[M]ost search warrant materials [**11] routinely become public . . . ."); *Baltimore Sun Co.*, 886 F.2d at 64 ("Frequently-probably most frequently-the warrant papers including supporting affidavits are open for inspection by the press and public in the clerk's office after the warrant has been executed."); 3A Charles Alan Wright, *Federal Practice and Procedure*, § 672 (2008) (stating that warrant materials are filed with the clerk of court and that sealing the materials is an "extraordinary action").

(In re NY Times Co., 585 F Supp 2d 83, 88-89 [DDC 2008].) (Internal Citations omitted).

This Court, has made a similar decision when facing a case with a remarkable, though significantly distinguishable, set of circumstances in 2009 - when the New York Times sought Title III wiretap related records from an investigation that implicated then New York Governor, Eliot Spitzer. (*See In re N.Y. Times Co.*, 600 F Supp 2d 504, 508 (SDNY 2009)). There the Court afforded great weight to documents allowing citizens to "keep a watchful eye on the workings of public agencies," noting that "there is an obvious interest in obtaining information about the origins of an investigation that led, ultimately, to the resignation of the Governor." (*Id*). The Court made a strong argument applying a First Amendment analysis to records supporting the Title III search warrant application documents. The District Court's order was later overturned, but only on a narrow Title III issue of interpretation.[17]

---

[17]See In re N.Y. Times Co., 577 F3d 401, 406 (2d Cir 2009) (Noting "The central question of statutory interpretation in this case is the meaning of "good cause" within the context of Title III").

## **Conclusion**

Petitioner respectfully asks this Court to immediately enter an order to unseal the search

warrant and supporting documents and make them available for public inspection

Dated:         December 9, 2016
                 New York, New York

                               Respectfully submitted,

By:

David B. Rankin
Abraham J. Hassen
Rankin & Taylor, PLLC
*Attorneys for the Plaintiff*
11 Park Place, Suite 914
New York, New York 10007
t: 212-226-4507
e: david@drmtlaw.com

9